**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| GLOBAL OIL & GAS TEXAS, LLC and GLOBAL OIL & GAS FIELDS OKLAHOMA, LLC, | § § § § | |
| *Plaintiffs.* | § § | |
| v. | § § | CASE NO.: 4:24-cv-00667 |
| BERNARD TUBEILEH et al., | § § | |
| *Defendants.* | § § § | |

**DEFENDANT BILLY HUDDLESTON'S MOTION TO DISQUALIFY TUCKER ELLIS LLP OR, ALTERNATIVELY, MOTION TO PROHIBIT USE OF CONFIDENTIAL INFORMATION OBTAINED IN THE STATE COURT ACTION, AND MEMORANDUM BRIEF IN SUPPORT OF SAME**

Defendant Billy Huddleston ("Huddleston") files this *Motion to Disqualify Tucker Ellis LLP or, Alternatively, Motion to Prohibit Use of Confidential Information Obtained in the State Court Action, and Memorandum Brief in Support of Same*, showing the Court as follows:

**I.**

**INTRODUCTION & SUMMARY**

1.    Tucker Ellis LLP ("Tucker Ellis") represents Global in the underlying State Court Action.[1] Beginning in early 2024, Plaintiffs Global Oil & Gas Texas, LLC and Global Oil & Gas Fields Oklahoma, LLC (collectively "Global") embarked on a scorched earth "third party" discovery campaign in the State Court Action designed to seek evidence in support of Global's long-planned claims against Huddleston. As part of its voluminous discovery efforts, thousands

---

[1] *Bernard Tubeileh and Sinostar Investments, LLC vs. Global Oil & Gas Texas, LLC and Global Oil & Gas Fields Oklahoma, LLC*, Case No. DC-23-07534, in the District Court of Dallas County, Texas—68th Judicial District (the "State Court Action").

**BILLY HUDDLESTON'S MOTION TO DISQUALIFY TUCKER ELLIS LLP AND MEMORANDUM BRIEF IN SUPPORT OF SAME**

of pages of documents were produced. Tucker Ellis is now in possession of confidential materials—including bank records, text messages and other information designated as confidential under the underlying protective order ("Confidential Information")—that it is using in violation of the Agreed Protective Order entered in the State Court Action to prosecute its "new" lawsuit against Huddleston in this Federal Action.

2.    The Court should disqualify Tucker Ellis from representing Global in this case because: (1) it has violated the rules of engagement governing federal practice by improperly obtaining evidence through "third party" discovery to Huddleston (and related entities) in the State Court Action—i.e., techniques outside the federal discovery process—to investigate and prepare its "new" case in this Federal Action; and (2) by using Confidential Information against Huddleston in a manner that both violates the express terms of the Agreed Protective Order and creates irreversible prejudice since *Huddleston can't use this evidence without violating the Agreed Protective Order himself.* For these and all the reasons set forth herein, the Court should enter an order of disqualification against Tucker Ellis or, alternatively, prohibiting the use of Confidential Information produced by *any party* in the State Court Action (including Global) against Huddleston to avoid continued abuse of the discovery process in this Federal Action.

## II.

## FACTUAL BACKGROUND

**A. Global pursues broad claims in the State Court Action—including concrete allegations against "non-party" Huddleston—agrees to protective order, and commences "third party" discovery against Huddleston and related entities.**

3.    The State Court Action began when former Global director Bernard Tubeilah ("Tubeileh") sued Global on June 6, 2023 for certain relatively straightforward claims arising out of a Purchase and Sale Agreement. *See Original Petition,* **Exhibit "1"** attached.

4.      On August 18, 2023, Global filed its *Original Answer, Affirmative Defenses, and Counterclaim*, a 69-page pleading that—while not naming Huddleston as a defendant—included numerous allegations that Huddleston had participated in an alleged conspiratorial scheme with Tubeilah and/or received assignments and commissions without consideration for same, including but not limited to the following:

88. In addition to the ORRIs Mr. Tubeileh purported to assign himself from Global Texas's interests, Mr. Tubeileh also diverted significant portions of Global Texas's working interests to himself and his associate, Billy Huddleston.

90. On April 27, 2021, Mr. Tubeileh assigned Mr. Huddleston a 0.5% CW1 in Horizontal Wells and a 1% CW1 in Vertical Wells. The Global U.S. Subsidiaries received no consideration or benefit for this assignment to Mr. Huddleston.[2]

91. Thus, while under the terms of the Blackhom ROFR, Global Texas acquired (and paid for) a 50% working interest in Vertical Wells and a 12.5% working interest in Horizontal Wells, Mr. Tubeileh's arrangement significantly diluted Global Texas's interests in the wells. Under Mr. Tubeileh's scheme, Global Texas paid for a 50% working interest in each Vertical Well, but received only a 30% working interest, while Mr. Tubeileh received a 19% CWI (at no cost) and Mr. Huddleston received a 1% CWI (at no cost). For Horizontal Wells, Global Texas paid for a 12.5% working interest, but received only an 8% working interest, while Mr. Tubeileh received a 4% CVVI (at no cost) and Mr. Huddleston received a 0.5% CWI (at no cost).

92. Through this arrangement, Mr. Tubeileh and Mr. Huddleston received upside exposure to the Blackhorn Wells without any downside risk or expense.

166. In addition, Mr. Tubeileh's associate, Billy Huddleston, received revenue from Global Texas's investments due to CWIs Mr. Tubeileh diverted to Mr. Huddleston.

203. On information and belief, Mr. Huddleston also received an unjustified commission of $27,500 from this [Ritchie County, West Virginia] transaction at the direction of Mr. Tubeileh.

*See Global's Original Answer, Affirmative Defenses, and Counterclaim*, **Exhibit "2"** attached.

---

[2] In a footnote, Global also stated: "Upon information and belief, Mr. Tubeileh frequently assigned interests in projects and paid commissions to Mr. Huddleston, collectively amounting to millions of dollars, despite Mr. Huddleston providing nothing of value to the Global U.S. Subsidiaries. Mr. Huddleston has a history of fraud in the oil and gas industry, including a $2 million adverse judgment arising out of his misappropriating investor money for personal expenses, including his significant gambling losses."

5.      On October 4, 2023, the trial court in the State Court Action entered a Level 3 Scheduling Order. *See* Level 3 Scheduling Orders, **Exhibit "3"** attached. The Scheduling Order expressly provided that provided that any additional parties must be joined within eight (8) months of commencement of the State Court Action (i.e., by February 6, 2024).

6.      On October 13, 2023, Global filed its *First Amended Answer, Affirmative Defenses, and First Amended Counterclaim*, a 92-page pleading that once again included numerous concrete allegations that Huddleston had participated in an alleged conspiratorial scheme with Tubeilah and/or received assignments and commissions without consideration for same, including those set forth above <u>plus</u> the following showing an *intentional addition* of information related to claims against Huddleston:

> ORIGINAL COUNTERCLAIM
> 200. In addition, Mr. Tubeileh intended to benefit personally from this sale by planning to use the $1.5 million in proceeds to further fund acquisitions in the Blackhorn Wells, which would require Global Texas to purchase additional purported ORRIs from Mr. Tubeileh and steer further CW1 revenue to Mr. Tubeileh.

> FIRST AMENDED COUNTERCLAIM
> 282. In addition, Mr. Tubeileh intended to benefit personally from this sale by planning to use the $1.5 million in proceeds to further fund acquisitions in the Blackhorn Wells, which would require Global Texas to purchase additional purported ORRIs from Mr. Tubeileh and steer further CWI revenue to Mr. Tubeileh **and Mr. Huddleston**.

*See Global's Original Answer, Affirmative Defenses, and Counterclaim*, ¶ 200, **Exhibit "2"** attached; *see also First Amended Answer, Affirmative Defenses, and First Amended Counterclaim*, ¶ 282, **Exhibit "4"** attached (emphasis added).

7.      However, despite these additional allegations—revealing a very plain intent to pursue claims against Huddleston—Global again did not include Huddleston as a party defendant in the State Court Action, despite ample opportunity to do so.

8.      On November 9, 2023, the state court entered an Agreed Protective Order broadly applying to "[a]ll materials produced or adduced in the course of discovery, including initial disclosures, responses to discovery requests, deposition testimony and exhibits, and information derived directly therefrom[.]" *See Agreed Protective Order*, **Exhibit "5"** attached.

9.      The Agreed Protective Order contained the following provisions restricting the use of Confidential Information to the *State Court Action only*:

> a.  All Confidential Information shall be used by the parties solely for the **necessary purposes of the prosecution or defense <u>of this action</u>**.
> b.  Confidential Information **shall not be used by the Receiving Party <u>in any other litigation, current or anticipated</u>**[.]

*Id*. at ¶¶ 7(c.)-7(d.) (emphasis added).

10.     On November 16, 2023, the Texas state court entered an agreed Level 3 Scheduling Order. *See* Level 3 Scheduling Orders, **Exhibit "3"** attached. The Scheduling Order again expressly provided that provided that any additional parties must be joined within eight (8) months of commencement of the State Court Action (i.e., by February 6, 2024).

11.     On February 15, 2024, Global filed its *Second Amended Counterclaim* in the State Court Action, an 88-page pleading again replete with contentions that Huddleston participated in an alleged conspiratorial scheme with Tubeilah and/or received assignments and commissions without consideration for same:

> **1. Paragraph 3.**
> Through a complex set of fraud, misrepresentations, self-dealing transactions, bribery, and undue influence, Mr. Tubeileh abused his positions of trust and authority in order to unlawfully divert millions of dollars from the Global U.S. Subsidiaries, enriching himself, his family, and his business associates and causing tens of millions of dollars in damages to the Global U.S. Subsidiaries,
> **2. Paragraph 9.**
> Mr. Tubeileh's unlawful schemes included (2) assigning rights in the Global U.S. Subsidiaries' investments to himself (and his associates, including Sinostar LLC and Jamalabox) without disclosing these transactions or paying a fair market rate;
> **3. Paragraph 90.**
> In addition to the ORRIs Mr. Tubeileh purported to assign himself from Global Texas's interests, Mr. Tubeileh also diverted significant portions of Global Texas's working interests to himself and his associate, Billy Huddleston.
> **4. Paragraph 92.**

**BILLY HUDDLESTON'S MOTION TO DISQUALIFY TUCKER ELLIS LLP AND MEMORANDUM BRIEF IN SUPPORT OF SAME**

On April 27, 2021, Mr. Tubeileh assigned Mr. Huddleston a 0.5% CWI in Horizontal Wells and a 1% CWI in Vertical Wells. The Global U.S. Subsidiaries received no consideration or benefit for this assignment to Mr. Huddleston.

Upon information and belief, Mr. Tubeileh frequently assigned interests in projects and paid commissions to Mr. Huddleston, collectively amounting to millions of dollars, despite Mr. Huddleston providing nothing of value to the Global U.S. Subsidiaries.

**5. Paragraph 93.**

Under Mr. Tubeileh's scheme, Global Texas paid for a 50% working interest in each Vertical Well, but received only a 30% working interest, while Mr. Tubeileh received a 19% CWI (at no cost) and Mr. Huddleston received a 1% CWI (at no cost).

For Horizontal Wells, Global Texas paid for a 12.5% working interest, but received only an 8% working interest, while Mr. Tubeileh received a 4% CWI (at no cost) and Mr. Huddleston received a 0.5% CWI (at no cost).

**6. Paragraph 94.**

Through this arrangement, Mr. Tubeileh and Mr. Huddleston received upside exposure to the Blackhorn Wells without any downside risk or expense.

**7. Paragraph 96.**

Mr. Tubeileh emailed Grant Norwood … to remind him that on all Horizontal Wells, Global Texas had a 1/8 (12.5%) interest, but that Global Texas carried Billy Huddleston with a 0.5% CWI.

**8. Paragraph 142.**

Mr. Tubeileh also received improper income … as well as royalty payments Mr. Tubeileh and related entities received from third parties linked to rights Mr. Tubeileh misappropriated from the Global U.S. Subsidiaries, such as the CWIs Mr. Tubeileh assigned to himself and to Billy Huddleston in relation to the Blackhorn Wells.

**9. Paragraph 178.**

In addition, Mr. Tubeileh's associate, Billy Huddleston, received revenue from Global Texas's investments due to the CWIs Mr. Tubeileh diverted to Mr. Huddleston.

**10. Paragraph 207.**

On March 30, 2018, Global paid Jamalabox $395,000 via wire transfer for consulting related to H.H. Coffield Minerals. On April 2, 2018, Sinostar LLC received a deposit from "Jam001" for $385,000. Global also paid BDHL LLC, an entity associated with Billy Huddleston, $217,000 in connection with this transaction.

**11. Paragraph 282.**

In addition, Mr. Tubeileh intended to benefit personally from this sale by planning to use the $1.5 million in proceeds to further fund acquisitions in the Blackhorn Wells, which would require Global Texas to purchase additional purported ORRIs from Mr. Tubeileh and steer further CWI revenue to Mr. Tubeileh and Mr. Huddleston.

**12. Paragraph 285.**

On information and belief, Mr. Huddleston also received an unjustified commission of $27,500 from this transaction at the direction of Mr. Tubeileh.

*See* Global's Second Amended Counterclaim, **Exhibit "6"** attached.

12.    By the time Global filed its *Second Amended Counterclaim*, the deadline to join additional parties in the State Court Action had expired, and Global did not seek leave of court to add Huddleston as a party defendant.

13.    On or about March 22, 2024, Global issued a Subpoena addressed to "non-party" Huddleston (the "Subpoena"). *See* Subpoena, **Exhibit "7"** attached. The Subpoena sought to

---

**BILLY HUDDLESTON'S MOTION TO DISQUALIFY TUCKER ELLIS LLP AND MEMORANDUM BRIEF IN SUPPORT OF SAME**

command Huddleston to produce a series of documents and communications related to transactions involving Global.

14.     On April 5, 2024, Huddleston, through counsel, learned that Global had served a notice to take his deposition on May 9, 2024 at 9:00 a.m. to parties in the State Court Action *without serving the notice on Huddleston's counsel or even contacting Huddleston's counsel about the proposed deposition. See Notice and Subpoena to Take Deposition of Billy Huddleston*, **Exhibit "8"** attached. Huddleston filed a motion to quash, arguing that "[t]he combination of the Subpoena and Deposition Notice served without any discussion with Huddleston's counsel makes it plain that Global intends to use these discovery mechanisms to attempt to obtain documents and information to then use against Huddleston in **future, yet unasserted, claims against him**." (emphasis added).

15.     Throughout early 2024, Bernard Tubeilah ("Tubeilah"), produced *hundreds* of pages of confidential documents, including all known text messages between Tubeilah and Huddleston (BT346083-346321), all text messages between Tubeilah, Huddleston and any third party (BT346530-347019) and all known emails between Huddleston and Tubeilah, and all known emails with third parties where Huddleston was copied. (BT001513-BT 275045). Many of these documents were marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER.", These documents cover in expansive detail materials directly relevant to Global's State Court Action and Federal Action.[3]

16.     On April 30, 2024—unbeknownst to counsel for Huddleston—Global then "undesignated" voluminous documents previously designated "Confidential" under the Agreed

---

[3] To avoid any possible waiver or violation of the Agreed Protective Order, Huddleston will produce documents *in camera* or file materials under seal as appropriate. Suffice it to say, there is <u>direct correlation</u> between the "CONFIDENTIAL" documents produced in the State Court Action and the facts asserted in Global's Federal Complaint.

Protective Order. *See* 04/30/24 Email, **Exhibit "9"** attached. This act of de-designating a large volume of documents previously marked confidential was an attempt by Tucker Ellis to sidestep the Agreed Protective Order that prevented use of these documents for "this action" or "any other litigation" pursuant to the protective order.

**B. Tucker Ellis compels production of attorney emails on grounds of lack of allied litigant privilege while simultaneously drafting new lawsuit against Huddleston and other defendants.**

17.     Global (through its counsel, Tucker Ellis) next took advantage of the fact that Huddleston was (nominally, at least) not a party to the State Court Action in obtaining emails between counsel for Huddleston and other defendants. At a hearing before the state trial judge on June 24, 2024, Global successfully compelled production of emails between attorneys for various co-defendants, including Huddleston, on the basis that the "allied litigant" privilege didn't apply. However, as detailed below, it is now plain that Global was working on its new lawsuit against Huddleston and other parties at the time it made those representations, consistent with its use of the discovery process for the purpose of obtaining documents and information for use against Huddleston in this Federal Action.

18.     Less than a month after the hearing in which it successfully compelled emails between Huddleston's counsel and other defendants, Global—by and through its counsel, Tucker Ellis—then filed its "new" litigation in federal court on July 17, 2024, in a case styled *Global Oil & Gas Texas, LLC et al. vs. Bernard Tubeileh et al.*, Case 4:24-cv-00667-O, in the United States District Court for the Northern District of Texas—Fort Worth Division (the "Federal Action"). *See Federal Complaint* (ECF 1). The "new" Federal Action contains parallel facts arising out of the same common nucleus and a plethora of names very familiar to the participants in the State Court Action, including Louisiana Offshore Exploration, LLC and Huddleston. *Id*. Given the

level of detail of the "new" *Complaint*, which spans **101 pages**, Global, via Tucker Ellis, had undeniably been working on its new lawsuit for some time. *Id*.

19.     Troublingly, the Federal Complaint tracks in detail documents and communications Huddleston (and others) produced that were marked "CONFIDENTIAL" under the Agreed Protective Order.[4] In some sections, almost line by line, the Federal Complaint provides chronological allegations involving Huddleston, Tubeilah, and related parties that can be cross-referenced directly to documents and information produced by Huddleston and other parties under the Agreed Protective Order.

**C. In accordance with the Agreed Protective Order, Huddleston produces additional documents and records to Global as trial judge expresses "concern" that Global is using documents obtained in "third party" discovery against Huddleston.**

20.     At a hearing on July 19, 2024, the Court heard argument on Huddleston's *Motion to Quash*, quashing the United Texas Bank subpoena, ordering limited production of documents (or privilege log) by Huddleston "related to transactions at issue in this lawsuit." At the same hearing, Huddleston produced significant evidence to the Court showing that "all text messages between Tubeilah and Huddleston have already been produced," as well as messages with any third party. Huddleston presented demonstratives to the Court including a 228-page table of thousands upon thousands of Bates-labeled emails.

21.     The trial judge agreed with Huddleston's concerns that Global was using these documents and information against him to prosecute new claims:

> I'll be honest, it does kind of concern me
> that it does seem like you, kind of, did an end around
> here. **I ordered the documents be produced and then you
> -- normally maybe they would have been protected if
> there was a valid -- and then you went and sued them in
> another Court. That is concerning to me.**

---

[4] See footnote 3 above.

*See Hearing Transcript Excerpts*, pg. 88:2-7 **Exhibit "10"** attached (emphasis added). The judge then reiterated his concerns: "THE COURT: You know what? You guys, I agree with them. **You decided to file some other separate lawsuit instead of doing it as part of this lawsuit. I have some concerns about that[**.**]**" *Id.* at pg. 90:7-11 (emphasis added).

22.    In accordance with the Agreed Protective Order, Huddleston produced documents and records to Global. On August 22, 2024, Huddleston produced all relevant documents as agreed between the parties and as required by the order, including the documents and records bates-labeled BH 000001-000194. *See* 08/22/2024 Correspondence to Christopher Akin producing documents Bates-labeled BH 000001-000194, **Exhibit "11"** attached.

23.    Judge Hoffman's concerns have now become quite real, as Global has utilized Confidential Information obtained in the State Court Action against Huddleston to support its claims in this case.

### III.

### <u>ARGUMENT & AUTHORITIES</u>

**A. A motion to disqualify is the proper method to raise issues such as the breach of ethical duties including Tucker Ellis's violations of the rules of engagement governing federal practice and improper use of Confidential Information.**

24.    Huddleston seeks disqualification of Tucker Ellis from representation of Global due to: (1) its use of "third party" discovery methods against Huddleston to support its long-anticipated claims against him (as represented in its state court pleadings); and (2) its possession of Confidential Information obtained in the State Court Action that it has utilized in support of its claims against Huddleston in the Federal Action. Tucker Ellis has both violated the rules of engagement governing federal practice (including use of materials obtained outside the federal discovery process) and has *irreversibly prejudiced* Huddleston by using Confidential Information

against him that *Huddleston himself cannot use without violating the Agreed Protective Order*. The ethical breaches and serious public interests at play warrant and require disqualification of Tucker Ellis in representing Global in this matter.

25.    As applied this district, "[a] motion to disqualify counsel, such as the one now before the court, 'is the proper method for a party-litigant to bring the issues of conflict of interest or breach of ethical duties to the attention of the court.'" *Grosser-Samuels v. Jacquelin Designs Enterprises, Inc.*, 448 F. Supp. 2d 772, 778 (N.D. Tex. 2006) (citing *Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir. 1980)).

26.    "Motions to disqualify are substantive in nature and are thus decided under federal law." *Asgaard Funding LLC v. ReynoldsStrong LLC*, 426 F.Supp.3d 292, 296 (N.D. Tex., 2019) (citing *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995)). "When considering motions to disqualify, courts should first look to 'the local rules promulgated by the local court itself.'" *In re ProEducation Int'l, Inc.*, 587 F.3d 296 (5th Cir. 2009) (citing *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995)). However, "local rules are not the 'sole' authority governing motions to disqualify counsel. Motions to disqualify are substantive motions." *Id*. at 1312.

27.    In determining a disqualification motion, "[a] court must take into account not only the various ethical precepts adopted by the profession but also the social interests at stake." *F.D.I.C.*, 50 F.3d at 1314. Among the factors that courts consider are "whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case." *Id*. For the

reasons set forth in greater detail below, the Court should disqualify Tucker Ellis from its representation of Global in this matter.

**B. Tucker Ellis violated the rules of engagement of federal practice by using "third party" discovery efforts in state court in a thinly veiled effort to fish for evidence to use in "new" federal litigation that Global has anticipated filing for some time.**

28.    Tucker Ellis's representation of Global is the "fruit of a poisonous tree" that it planted through the unethical practice of serving "third party" discovery to Huddleston (and related entities) to investigate and prepare its new case in this Federal Action. These actions violate the rules of engagement for federal practice and require Tucker Ellis's disqualification as counsel for Global in this case.

29.    The standard for attorney disqualification under federal law as applied in the Fifth Circuit involves the "substantial relationship" test. This test is primarily concerned with preserving the duties of confidentiality and loyalty owed to a former client. *In re Am. Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992). However, as set forth below, disqualification can arise from other misconduct, such as seeking to introduce improperly obtained evidence or breach of a protective order. The Fifth Circuit has established that once a substantial relationship between the past and current representations is established, disqualification is required, regardless of whether any confidential information was actually exchanged. The substantial relationship test is concerned with both a lawyer's duty of confidentiality and his duty of loyalty. *In re Am. Airlines, Inc.*, 972 F.2d at 619.[5]

---

[5] Similarly, under Texas law, an attorney's possession of confidential information of an adverse party can require disqualification of an attorney. TX ST RPC Rule 1.09 (while pertaining to former clients, this rule centers upon possession of confidential information in "substantially related" matters, and unquestionably Global's lawsuits in the State Court Action and the Federal Action are substantially related[5]). The standard for disqualification does not require proof of actual wrongdoing or actual disclosure of confidential information. Instead, it is based on a "reasonable probability" that confidential information could be used to the disadvantage of the adverse party. *In re Hoar Const., L.L.C.*, 256 S.W.3d 790, 800 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding).

30.     A federal court may "use its inherent powers to sanction a party who circumvents the discovery process and the rules of engagement employed by the federal courts by improperly obtaining evidence before litigation and then attempting to use that evidence in litigation." *Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273, 1315 (D. Utah 2016), *aff'd sub nom. Xyngular v. Schenkel*, 890 F.3d 868 (10th Cir. 2018) (citing *Fayemi v. Hambrecht & Quist, Inc.*, 174 F.R.D. 319, 324 (S.D.N.Y. 1997) (holding that the court "has the inherent authority to sanction a party who attempts to use in litigation material improperly obtained outside the discovery process"); id. at 325 ("A court may ... exercise its inherent equitable powers to sanction a party that seeks to use in litigation evidence that was wrongfully obtained."); In re Shell Oil Refinery, 143 F.R.D. 105, 108 (E.D.La.1992) (holding that courts may sanction parties who obtain documents outside the discovery process pursuant to their "authority to remedy litigation practices that threaten judicial integrity and the adversary processes")). A "court may sanction a party for wrongfully obtaining the property or confidential information of an opposing party." *Id.* at 1316 (D. Utah 2016), *aff'd sub nom. Xyngular v. Schenkel*, 890 F.3d 868 (10th Cir. 2018). Further, "[a] court may disqualify an attorney when his conduct gives rise to sanctions." *Xyngular Corp.*, *Id.* at 1326.

31.     This Court should disqualify Tucker Ellis from representing Global in this Federal Action. Tucker Ellis knew that Global was going to sue Huddleston yet proceeded with "third party" discovery designed to support Global's alleged claims against Huddleston, obtaining Confidential Information in the process (informing substantial portions of its Federal Complaint). Tucker Ellis embarked on a lengthy "third party" discovery campaign in the State Court Action designed to obtain documents and information to investigate and prepare a "new" case against Huddleston. With each iteration of Global's pleadings, new, greater detail emerged against

Huddleston: for example, on October 13, 2023 (still within the party joinder period), Global filed its *First Amended Answer, Affirmative Defenses, and First Amended Counterclaim*, a 92-page pleading that once again included numerous concrete allegations that Huddleston had participated in an alleged conspiratorial scheme with Tubeilah and/or received assignments and commissions without consideration for same, including those set forth above <u>plus</u> the following showing an *intentional addition* of information related to claims against Huddleston:

> ORIGINAL COUNTERCLAIM
> 200. In addition, Mr. Tubeileh intended to benefit personally from this sale by planning to use the $1.5 million in proceeds to further fund acquisitions in the Blackhorn Wells, which would require Global Texas to purchase additional purported ORRIs from Mr. Tubeileh and steer further CW1 revenue to Mr. Tubeileh.

> FIRST AMENDED COUNTERCLAIM
> 282. In addition, Mr. Tubeileh intended to benefit personally from this sale by planning to use the $1.5 million in proceeds to further fund acquisitions in the Blackhorn Wells, which would require Global Texas to purchase additional purported ORRIs from Mr. Tubeileh and steer further CWI revenue to Mr. Tubeileh **and Mr. Huddleston**.

*See Global's Original Answer, Affirmative Defenses, and Counterclaim*, ¶ 200, **Exhibit "2"** attached; *see also First Amended Answer, Affirmative Defenses, and First Amended Counterclaim*, ¶ 282, **Exhibit "4"** attached (emphasis added). The three added words, "and Mr. Huddleston," plainly show that Global was developing claims against Huddleston at least as early as fall 2023.

32.    Global's allegations against Huddleston broadened as the State Court Action developed, evidencing a plain intent to sue him (at minimum, to seek to "claw back" Huddleston's commissions and related interests). Yet each time Global amended its pleadings in the State Court Action, *Global failed to add Huddleston as a party defendant*. Notwithstanding its nominal designation of Huddleston as a "non-party," Global, through Tucker Ellis, advanced towards acquiring additional documents and information to substantiate its claims against him:

(a) on March 22, 2024, a Subpoena was issued to Huddleston, compelling him to produce documents and communications pertinent to transactions involving Global, including communications with Tubeilah (*see* Subpoena, **Exhibit "7"** attached); (b) subsequently, on April 5, 2024, Huddleston's counsel became aware that Global had served notice for Huddleston's deposition in May without prior communication or service to his counsel, effectively excluding Huddleston's counsel from the e-filing service list. Concurrently, other parties produced voluminous confidential documents: for example, Tubeilah disclosed all known text messages between himself and Huddleston, all communications involving third parties, and all relevant emails. These documents were marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER," encompassing materials directly pertinent to both Global's State Court Action and Federal Action.

33.     On April 30, 2024, without notifying Huddleston's counsel, Global undesignated numerous documents previously marked confidential under the agreed protective order. This act was an attempt by Tucker Ellis to circumvent the protective order that restricted the use of these documents in this or any other litigation. Furthermore, Global exploited Huddleston's nominal "non-party" status by obtaining emails between Huddleston's counsel and other defendants on the grounds that the allied litigant privilege did not apply.

34.     Importantly, Global attempted to use the Subpoena and Deposition Notice—the permissible scope of discovery is determined by the causes of action *currently pled*—to attempt to find evidence to use against Huddleston in *yet unasserted* claims. In performing the relevance analysis, "[c]ourts measure the scope of discovery by the **live pleadings containing the pending claims**[.]" *In re Zhang*, No. 01-22-00856-CV, 2023 WL 3956860, at *5 (Tex. App.—Houston [1st Dist.] June 13, 2023, orig. proceeding) (emphasis added). *However, Global had not yet*

*asserted its claims against Huddleston in a "live pleading."* Huddleston was therefore "going blind" in responding to discovery in the State Court Action without actual notice of the claims against him[6] while, behind the scenes, Tucker Ellis was investigating and preparing Global's Federal Action based on discovery in the State Court Action.

35.    Less than a month after successfully compelling disclosure of emails between Huddleston's counsel and other defendants at a hearing, Global, through Tucker Ellis, filed the Federal Action on July 17, 2024. Alarmingly, the Federal Complaint meticulously details documents and communications produced by Huddleston, Tubeilah and others during state court discovery that were marked "CONFIDENTIAL" under the Agreed Protective Order. Indeed, the trial judge expressed significant concerns that Global was utilizing documents and information obtained through "third-party" discovery to bolster its new claims in federal court. Those concerns have now materialized, as Tucker Ellis filed the instant Federal Action against Huddleston using documents and information obtained through its "third party" discovery and through use of Confidential Information obtained in the State Court action.

36.    There is simply no way to characterize Tucker Ellis's discovery efforts in the State Court Action as "innocent" attempts to gather information to support its claims against Tubeilah and Sinostar only. Tucker Ellis knew that Global intended to sue Huddleston and embarked upon a campaign of "third party" discovery designed to gain documents and information to use against him in this "new" Federal Action. And any application of the "substantial relationship" test supports disqualification, since the State Court Action and the Federal Action are not just related, but virtually identical in factual content and legal claims asserted.

---

[6] In addition to lack of notice of the claims against him, the defenses are different as between non-parties and parties. Global therefore subverted the discovery process by limiting the discovery objections and defenses available to a defendant by treating him as a "third party."

**BILLY HUDDLESTON'S MOTION TO DISQUALIFY TUCKER ELLIS LLP AND MEMORANDUM BRIEF IN SUPPORT OF SAME**

37.    Tucker Ellis's actions satisfy the applicable factors, including: (1) the appearance of impropriety in general (which certainly exists here, as the trial judge's own concerns demonstrate, Tucker Ellis's use of "third party" discovery methods followed by its initiation of this "new" lawsuit despite the prohibitions in the Agreed Protective Order certainly raises an appearance of impropriety); (2) a possibility that a specific impropriety will occur (more than a "possibility" here, given the significant overlap between the Confidential Information produced in the State Court Action and the claims—including factual material that tracks documents and other Confidential Information from the State Court Action—asserted in the Federal Action); and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case. There is unquestionably a likelihood of "public suspicion" arising out of Tucker Ellis's conduct, and Global—which has hired numerous attorneys and law firms to defend and prosecute claims arising out of the facts asserted in the State Court Action—cannot demonstrate any great "social interest" that would be served by Tucker Ellis's continued participation in this case. For these and all the reasons set forth herein, Tucker Ellis's actions violate the rules of engagement for federal practice and require the firm's disqualification as counsel for Global in this case.

**C.    Tucker Ellis's possession of Confidential Information of an adverse party—i.e., Huddleston and other defendants—requires disqualification from its representation of Global in this case.**

38.    Tucker Ellis should also be disqualified from representing Global in this Federal Action because of its use and possession of Confidential Information obtained in discovery in the State Court Action. These documents are subject to the Agreed Protective Order entered in the underlying litigation, and Tucker Ellis's representation of Global while in possession of these documents creates an unfair, irreversible prejudice to Huddleston in defending Global's claims.

39.    A violation of a protective order can serve as grounds for disqualification. For example, in a federal case involving trade secrets, an attorney was disqualified because he misrepresented himself as "outside counsel" under a Stipulated Protective Order (SPO) to receive "attorneys' eyes only" documents, despite having an 8% ownership interest in the entity, which he failed to disclose in violation of the protective order. *Field Turf USA, Inc. v. Sports Const. Grp., LLC*, No. 1:06 CV 2624, 2007 WL 4412855, at *7 (N.D. Ohio Dec. 12, 2007). In disqualifying the lawyer, the court noted that "[a] court may disqualify an attorney 'when there is a reasonable possibility that some specifically identifiable impropriety actually occurred" and "where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice.'" *Id*. at *5 (citing *SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F. Supp. 2d 863, 865 (S.D. Ohio 2002)). The court found that the lawyer's actions in reviewing the AEO materials, including misleading the court and opposing counsel, warranted disqualification. *Id*. at *9.

40.    Likewise, in a case in the Eastern District of Louisiana, an attorney violated a protective order by disclosing confidential information related to the priest subject to the litigation to third parties outside the scope of the applicable protective order. *In re Roman Cath. Church of Archdiocese of New Orleans*, 678 F. Supp. 3d 797, 806–07 (E.D. La. 2023). The attorney disclosed the priest's name to his cousin, a high school principal, and a journalist, leading to a published article. *Id*. at 807-808. The protective order included the following language:

> Any Protected Material, and all information derived from Protected Material (including, but not limited to, all testimony, deposition, or otherwise, that refers, reflects or otherwise discusses any information designated "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" under this Protective Order), shall not be used, directly or indirectly, by any person for any business, commercial or competitive purposes, or for

any     purpose     whatsoever     other     than     for     Authorized     Uses

*Id*. at 806–07. The court found his actions to be in bad faith, wasteful, and disruptive to the

bankruptcy case, resulting in monetary sanctions of $400,000 and his disqualification from

handling further confidential information. *Id*. at 825-826.

41.     This Court should disqualify Tucker Ellis because it is in possession of

Confidential Information obtained in the State Court Action that informs Global's claims in the

Federal Action. Even a cursory review of Global's Federal Complaint reveals that it is *replete*

with allegations arising out of documents (including text messages between Huddleston and

Tubeilah) marked "CONFIDENTIAL" in the State Court Action. The "cat is out of the bag" and

there is simply no putting it back now: a <u>direct correlation</u> exists between the

"CONFIDENTIAL" documents produced in the State Court Action and the facts asserted in

Global's Federal Complaint.

42.     There is simply no question that the *Agreed Protective Order* prohibits the use of

Confidential Information for any purposes outside the State Court Action:

      a.  All Confidential Information shall be used by the parties solely for the **necessary purposes of the prosecution or defense <u>of this action</u>**.
      b.  Confidential Information **shall not be used by the Receiving Party <u>in any other litigation, current or anticipated</u>**[.]

*Id*. at ¶¶ 7(c.)-7(d.) (emphasis added). Tucker Ellis, having possession of substantial documents

and information marked "CONFIDENTIAL" in the State Court Action, cannot ethically

represent Global in its claims against Huddleston in this Federal Action.

43.     As part of Tucker Ellis's voluminous discovery efforts on behalf of Global in the

State Court Action, thousands of pages of documents were produced. Tucker Ellis is in

possession of confidential materials—including bank records and other information designated

as "CONFIDENTIAL" under the underlying protective order—that it is now wrongfully using to

prosecute the instant lawsuit against Huddleston and other defendants. By using this Confidential Information against Huddleston, Tucker Ellis has violated the express terms of the *Agreed Protective Order* and is ethically prohibited from representing Global in this matter. Therefore, the Court should enter an order of disqualification against Tucker Ellis.

**D. Tucker Ellis's possession of Confidential Information is imputed to other members of the firm, and no level of screening can undo the harm due to the virtually identical nature of the two matters.**

44.    No amount of "screening" can undo the harm done to Huddleston due to Tucker Ellis's use of Confidential Information to support Global's claims in this matter. In the Fifth Circuit, "evidence that a firm has carefully screened a conflicted attorney and that no confidential information has been shared between attorneys in the conflicted attorney's firm is **irrelevant**." *Acad. of Allergy & Asthma in Primary Care v. Louisiana Health Serv. & Indem. Co.*, 384 F. Supp. 3d 644, 653 (E.D. La. 2018) (emphasis added).[7] Indeed, "[t]he test is categorical in requiring disqualification upon the establishment of a substantial relationship between past and current representations." *In re Am. Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992).[8] Far beyond a "substantial relationship" between the two matters, this case is *virtually identical* to the State Court Action. Tucker Ellis therefore cannot "screen" away one lawyer from another in an attempt to avoid the conflict created by its possession of Confidential Information obtained in the State Court Action.

---

[7] The lone exception is the case of a "migrating attorney," which does not apply here. *Id.*

[8] Likewise, under Texas law, there is an irrebuttable presumption that a lawyer who has moved firms has shared the client's confidences with members of the new firm, leading to mandatory disqualification. *In re Reeder*, 515 S.W.3d 344, 349 (Tex. App.—Tyler 2016, no pet.). The Texas Supreme Court has consistently upheld this principle, emphasizing that it is virtually impossible for a client to prove that their former lawyer has not shared confidential information with their new firm. *In re Am. Home Products Corp.*, 985 S.W.2d 68 (Tex. 1998). Therefore, the presumption of shared confidences is irrebuttable, and the new firm must be disqualified from representing a client adverse to the former client in a substantially related matter. Again, while this case law generally pertains to prior representation of the adverse party, the crux of the rationale centers upon the lawyer's obtaining *confidential information* about the adverse party. *In re Reeder*, 515 S.W.3d at 349 ("if the attorney works on a matter, an irrebuttable presumption arises that the attorney obtained **confidential information** during the representation") (emphasis added).

45.     The bottom line: Tucker Ellis obtained Confidential Information from Huddleston (and other parties) through discovery produced under the Agreed Protective Order in the State Court Action. Huddleston is now placed in the impossible position of defending claims brought against him by Global in violation of the Agreed Protective Order, while *himself remaining subject to the same Agreed Protective Order*—i.e., unable to use documents from the State Court Action to defend against Global's to avoid violating the order himself. For these and all the reasons set forth herein, the Court should disqualify Tucker Ellis from representing Global in this case.

**E. In the alternative, the Court should prohibit the use of Confidential Information obtained in the State Court Action against Huddleston in this case.**

46.     Alternatively, the court should prohibit the use of Confidential Information produced by *any party* in the State Court Action (including Global) against Huddleston to avoid continued abuse of the discovery process. A federal court in the Fifth Circuit has broad authority to exclude evidence under Federal Rule of Evidence 403. This rule allows the court to exclude relevant evidence if its probative value is substantially outweighed by dangers such as unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. As set forth above, Huddleston has been placed in the *impossible* position of defending claims brought based on documents and information obtained in discovery by Global under the Agreed Protective Order, and then being unable to use Confidential Information himself to defend themselves against Global's claims. Therefore, the Court should, alternatively, prohibit Global from using *any* Confidential Information produced by any party in the State Court Action as evidence in this case.

## IV.

## <u>CONCLUSION</u>

47.    The Court should disqualify Tucker Ellis from representing Global in this case because: (1) it has violated the rules of engagement governing federal practice by improperly obtaining evidence through "third party" discovery to Huddleston (and related entities) in the State Court Action—i.e., techniques outside the federal discovery process—to investigate and prepare its "new" case in this Federal Action; and (2) by using this Confidential Information against Huddleston in a manner that both violates the express terms of the Agreed Protective Order and creates irreversible prejudice since *Huddleston can't use this evidence without violating the Agreed Protective Order himself*. For these and all the reasons set forth herein, the Court should enter an order of disqualification against Tucker Ellis or, alternatively, prohibiting the use of Confidential Information produced by *any party* in the State Court Action (including Global) against Huddleston. Huddleston further prays for general relief.

Respectfully submitted,

Gene A. Hamm II
SBOT # 00795405
ghamm@hammfirm.com
John P. Martin
SBOT # 24074657
jmartin@hammfirm.com

**THE HAMM FIRM**
1333 W. McDermott, Suite 200
Allen, Texas 75013
Main:  469.656.1593
eFax:  469.656.1594

ATTORNEYS FOR DEFENDANT BILLY
HUDDLESTON

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred regarding the merits of this motion on the 16th day of December, 2024, with counsel for Global, Richard Roper, who indicated that Global is opposed to the relief requested in this motion, which is therefore presented to the Court for determination.



Gene A. Hamm II

## CERTIFICATE OF SERVICE

I hereby certify that I filed a true and correct copy of the foregoing via the ECF e-filing system on the 16th day of December, 2024, which served notice to all counsel of record.

Gene A. Hamm II